M. ASHLEY DICKERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickerson v. Commissioner
Docket No. 23325-89
United States Tax Court
T.C. Memo 1990-577; 1990 Tax Ct. Memo LEXIS 649; 60 T.C.M. (CCH) 1202; T.C.M. (RIA) 90577; November 8, 1990, Filed *649 Decision will be entered under Rule 155. M. Ashley Dickerson, pro se. Stephen P. Baker, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION The primary issue for decision is whether a practicing attorney is entitled to a depreciation deduction for an enclosed swimming pool at her residence. Petitioner filed her 1985 return late on October 20, 1986. Respondent determined a deficiency in petitioner's Federal income tax for 1985 in the amount of $ 3,510 and additions to tax as follows: Additions to Tax
Year
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2) 1985
$ 496
$ 466
50 percent of the
interest due on $ 3,510.
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. *651 The issues for decision are: (1) Whether depreciation of the swimming pool and enclosure at petitioner's residence is deductible under section 280A on the grounds that it is part of her home office. We hold it is not. (2) Whether petitioner's late filing is excused by the condition of her health and the rigors of a law practice. We hold it is not. (3) Whether any of the underpayment of tax was attributable to negligence or intentional disregard of rules and regulations under section 6653(a)(1) and (2). We hold it was not. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. The Petitioner and Her Law Practice
In 1985 petitioner was a full-time practicing attorney, incorporated as M. Ashley Dickerson, Inc. She maintained a law office in Anchorage, Alaska. Petitioner was 72 years old in 1985 and 77 at the time of trial. Petitioner came to Alaska in 1958 from Indiana when she was about 45 years old. She homesteaded 160 acres of land (the homestead) in Wasilla. In 1985 her home was located on this property. The homestead is about 53 miles from Anchorage. In 1985 her law office in Anchorage had a total of seven staff members. The *652 firm also had other space at a separate location in Anchorage in 1985. The corporation issued a Form W-2 for 1985 addressed to M. Ashley Dickerson at the corporation's Anchorage office. Petitioner also saw clients at her home in Wasilla, in the Matanuska Valley (the Valley). Petitioner does not maintain an office in Wasilla apart from her home. There has been a state courthouse in the Matanuska Valley in Palmer, Alaska, near Wasilla, since around 1980, which has made Wasilla a more convenient base for the practice of law. Some of petitioner's clients lived in the Matanuska Valley. Her daily reminder book for 1985 shows 64 entries for these clients. An entry may represent, for example, a single conference or a multi-day trial in Palmer or Anchorage. There is no permanent staff based in Wasilla to assist petitioner. The firm's attorneys and staff sometimes go to petitioner's home in Wasilla to assist petitioner with clients and to do other work relating to the law practice. Sometimes staff stay there overnight on these visits. There is no evidence that petitioner or the corporation through which she practices law maintains separate financial records for clients seen in *653 Anchorage and Wasilla. In 1985 she reported no income from the practice of law other than from M. Ashley Dickerson, Inc. She is listed as an attorney in both the Anchorage and Matanuska Valley telephone directories. Petitioner loves the practice of law, and has devoted enormous energy to it and her clients over the years. She has a vigorous and gracious demeanor that has attracted clients to her. She takes pride in practicing with a human touch, helping people with legal problems they face. Her clients become her friends. She thinks of her clients as family and that view is shared by many of them. As a result, she has friendships with many people whom she first met as clients. The intensity of her practice has reduced her opportunity to develop friends other than those whom she has met as clients. Petitioner is a past president of the National Association of Women Lawyers. Petitioner had triplets around 1940. One of her sons, Alfred, was tragically drowned on a trip to Alaska when he was 20 years old. He is buried at the homestead. Petitioner took swimming and lifesaving lessons when she was in her mid to late 60's, around 1978 or 1979. She mastered several strokes, *654 and became a good swimmer. Petitioner has had some health problems. She has had extensive and severe dermatitis for several years, and intermittently at least since 1970. It was diagnosed by a physician as severe eczematous dermatitis in 1990. It required hospitalization and outpatient treatment and consideration of maintenance therapy in 1990. She has also had hyperthyroidism, which was confirmed in 1987 and previously in 1967. Petitioner has had an inability to sleep and other ongoing problems. She was hospitalized for nine days in 1985. She did not feel well during 1986, and she was hospitalized for 10 days in October 1986 because of her thyroid condition. She was treated successfully with radioactive iodine therapy in 1987. She had a thyroidectomy in 1987. Petitioner practiced law throughout this period, although she did not keep up her usual speed and she was physically ill some of the time. 2. Petitioner's Wasilla Homestead and Swimming Pool
The first floor of petitioner's Wasilla home has a living room, dining room, kitchen, bathroom, and a solarium with a swimming pool. There are files in the living and dining rooms. The first floor also has a computer, *655 a photocopying machine, and a facsimile machine. There is a sliding glass door between the kitchen and solarium. The second floor has four bedrooms and a bathroom. There is a 16-acre lake on the property. Petitioner jointly owns 10 of the 160 acres with the Quaker Church. There is a Quaker meeting house on the property. The Quakers have occasional activities on the property. Petitioner slept at her Wasilla home primarily on weekends in 1985. During the week she usually stayed in Anchorage. Petitioner had household insurance for the home and pool, but not business or commercial insurance. Petitioner constructed the pool in 1981 and added the solarium in 1982. The pool is 15 feet by 30 feet, and the solarium is about 30 or 35 feet by 60 feet. The pool is heated. It is located somewhat to the side of the solarium, leaving 10 to 15 feet along one side and about 5 feet on the other. On the side with 10 to 15 feet of space there is a redwood picnic table which petitioner used as a desk. There was a telephone by the table, some decorative plants, and benches. There are large picture windows on one side of the solarium with a view of a beautiful mountain range. There are *656 swimsuits available for guests to borrow. The pool area has no distinctive business furnishings. All the furnishings are personal and informal in nature. 3. Petitioner's Activities with Clients at Her Wasilla Home and Use of the Pool
Clients came to petitioner's Wasilla house on most weekends, and often brought other members of their family. When clients were there she would frequently meet with them by the pool and also sometimes in the kitchen or living room. Petitioner had a staff member at the house many times when clients were there. Staff members often fixed coffee and refreshments for the clients in the kitchen. Clients could use the first floor bathroom. Petitioner used the pool and solarium for the following purposes. (a) She worked on matters relating to her practice at the redwood table beside the pool. This included numerous meetings with clients and witnesses. Sometimes she ate light meals while working there. (b) Children and spouses of clients often swam while she was talking to the client. Sometimes she met with the client in the kitchen, which had a view of the pool, while family members of the client swam. (c) Clients often joined their *657 families swimming after talking with petitioner. (d) A neighbor who had helped her with her taxes and his family swam there. Another neighbor for whom she had done legal work and his family swam there. (e) Occasionally the firm's staff swam. This was usually when they were there in connection with legal work. (f) An annual 4th of July picnic was held for clients and their families, at which many people swam. Most of the firm's staff also attended. (g) Occasionally people swam without having a legal appointment, and occasionally they were allowed to swim by the person who oversaw the house for petitioner when she was away. (h) Sometimes Quakers who were at the homestead swam in the pool. (i) The pool area was used as a smoking area because the solarium windows can be opened. Petitioner does not allow smoking elsewhere in her home. (j) Sometimes petitioner swam. Petitioner is an excellent swimmer, having taken swimming and lifesaving lessons around 1978 or 1979. She swam occasionally with others in 1985, such as with clients with whom she had become friends, and on her 73d birthday on October 12, 1985. 4. Tax Treatment of the Pool and Enclosure
On Schedule *658 A - Itemized Deductions, of her return, petitioner listed a miscellaneous deduction as "Depreciation $ 1,923.55." On Form 4562 Depreciation and Amortization, petitioner indicated, "For entertaining law clients: Swimming Pool, Swimming Pool Enclosure." She deducted $ 1,256.88 for the pool and $ 666.67 for the enclosure for a total depreciation deduction of $ 1,923.55. Respondent determined in the notice of deficiency that the $ 1,923.55 claimed on the return attributable to the swimming pool and enclosure was disallowed, stating, "Depreciation on your swimming pool has been disallowed as it has not been shown to be ordinary and necessary to your business or profession." OPINION Deductions are a matter of legislative grace, and the applicable statutory elements must be met for allowance of deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). 1. Deduction for Depreciation of the Swimming Pool
At trial, petitioner defended her depreciation *659 deduction for the swimming pool and enclosure under section 280A(a) on the theory that it comprises part of her home office. Section 280A provides, in pertinent part: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) GENERAL RULE. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.- (1) CERTAIN BUSINESS USE. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with *660 the taxpayer in the normal course of his trade or business, or The Wasilla home was a dwelling unit used by petitioner as a residence. The swimming pool enclosure was part of petitioner's home. Thus, section 280A(a) precludes petitioner's depreciation deduction unless an exception is applicable. Section 280A(c)(1)(A) allows a deduction for home office expenses if the home office is exclusively and regularly used as the principal place of any trade or business. Petitioner argues that she had two separate law practices, and that the Wasilla home was the principal place of business for the Wasilla law practice. We disagree. We conclude that petitioner's principal place of business was in Anchorage. Petitioner was an employee of one professional corporation. We conclude that she conducted a single law practice, the principal place of business of which was in Anchorage. Section 280A(c)(1)(B) allows a deduction for home office expenses if the home office is exclusively and regularly used as a place of business for clients, patients, or customers to meet with the taxpayer in the normal course of his or her trade or business. Here, the swimming pool and solarium were used by clients *661 on many occasions in meeting with petitioner. However, section 280A(c)(1)(B) requires exclusive use. The swimming pool and solarium were not exclusively used as a place of business for clients to meet with petitioner. We find that much of the use of the pool and solarium by her clients and their families was recreational. Petitioner says she works on her practice during all of her waking hours, and that she wishes to work and see clients and their families in an informal setting. She says her entire existence is for the practice of law. We acknowledge petitioner's self-description as a workaholic, but we do not accept that the pool and solarium were used exclusively as a place of business to meet with clients. Accordingly, neither exception to the general rule barring deductions for a dwelling unit applies to petitioner, and the depreciation deduction is barred by section 280A. 2. Additions to Tax
a. Late Filing
Section 6651(a)(1) provides for an addition to tax for failure to file a timely tax return, "unless it is shown that such failure is due to reasonable cause *662 and not due to willful neglect." The burden of proof is on petitioner to show that the failure is due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Davis v. Commissioner, 81 T.C. 806, 820 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). In order to prove "reasonable cause," a taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; Crocker v. Commissioner, 92 T.C. 899, 913 (1989). Petitioner had some health problems during the time she should have filed her tax return for 1985. However, she continued to practice law. The fact that she practiced law actively throughout this period, we believe, shows her health did not prevent her from filing her tax return on time. We find that petitioner's failure to timely file her return was not due to reasonable cause. Therefore, we find that she is liable for the addition to tax under section 6651(a)(1). b. Negligence
Respondent determined that petitioner is *663 liable for the negligence additions to tax under section 6653(a)(1) and (2) for 1985. Section 6653(a)(1) imposes an addition to tax equal to five percent of the underpayment if any part of any underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes an additional liability of 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that respondent's determination that she was negligent or intentionally disregarded the rules and regulations for the year in issue was erroneous. Warrensburg Board & Paper Corp. v. Commissioner, 77 T.C. 1107, 1112 (1981); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). For purposes of these sections, "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), citing Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), *664 affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299. Based on the entire record, we find that the additions to tax under section 6653(a)(1) and (2) do not apply. To reflect concessions of both parties, Decision will be entered under Rule 155.